# NO. 12-18-00055-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHRISTOPHER ADAM MORGAN, GARY LEE MCANALLY AND DOUGLAS RAY LANEY, APPELLANTS* | *§* | *APPEAL FROM THE 241ST* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *CLEMENTS FLUIDS SOUTH TEXAS, LTD. AND CLEMENTS FLUIDS HENDERSON, LTD., APPELLEES* | *§* | *SMITH COUNTY, TEXAS* |

## *OPINION*

Christopher Adam Morgan, Gary Lee McAnally, and Douglas Ray Laney appeal the trial court's order denying their motion to dismiss Clements Fluids South Texas, LTD. and Clements Fluids Henderson, LTD.'s ("Clements") misappropriation of trade secrets claim and the trial court's order granting Clements' temporary injunction. We affirm in part, reverse in part, and modify and affirm in part.

## BACKGROUND

Appellants are former employees of Clements, an oil and gas services company. Clements developed a confidential and proprietary system for addressing the loss of circulation during well completion and production, which it refers to as "salt systems." During the course of the parties' employment relationship, Clements disclosed confidential and proprietary information specifically related to salt systems to Appellants. Clements also shared confidential and proprietary information about its clients and prospective clients. Clements claims that Appellants had no training or knowledge of salt systems prior to their employment with Clements. While employed at Clements, Appellants signed non-disclosure agreements (NDAs) stating they would not (1)

disclose or use any proprietary information to or for any third party; or (2) solicit for employment any employee of Clements or anyone who they met through their employment with Clements for one year from the date of the termination of their employment.

In September 2017, McAnally quit working for Clements and was hired by Greenwell Energy Solutions ("Greenwell"), one of Clements' competitors. In January 2018, McAnally authored a post on Greenwell's website reporting the launch of its salt systems mixing plant. In February, Morgan left Clements and went to work for Greenwell. Two days later, Greenwell performed its first salt systems jobs for Pioneer Natural Resources ("Pioneer"), one of Clements' customers. Prior to Greenwell's salt systems job for Pioneer, Clements performed all of Pioneer's salt systems work. After Laney resigned from Clements, he contacted two of Clements' employees to ask them to come work with him performing salt systems for ChemCo, another of Clements' competitors.

Clements sued Appellants for breach of contract and misappropriation of trade secrets and sought injunctive relief and monetary damages. Clements obtained an ex parte temporary restraining order, and a hearing on a temporary injunction was set. Appellants filed a motion to dismiss Clements' misappropriation of trade secrets claim pursuant to the Texas Citizen's Participation Act (TCPA). Prior to hearing evidence at the temporary injunction hearing, the trial court considered and denied Appellants' motion to dismiss. Thereafter, the trial court granted a temporary injunction prohibiting Appellants from, among other things, directly or indirectly working on salt systems. This appeal followed.

### TCPA MOTION TO DISMISS

In Appellants' first issue, they argue that the trial court erred in denying their motion to dismiss pursuant to the TCPA.

### Standard of Review and Applicable Law

The TCPA provides a mechanism for early dismissal "if a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, the right to petition, or the right of association…" TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (West 2015). The TCPA provides a two-step, burden shifting framework for resolving TCPA motions. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The movant has the initial burden to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise

2

of" the right of free speech, the right to petition, or the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West 2015); *Lipsky*, 460 S.W.3d at 586. If the movant makes the requisite showing, then the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Lipsky*, 460 S.W.3d at 587. However, even if the plaintiff establishes a prima facie case, the court shall dismiss the case if the movant establishes each essential element of a valid defense by a preponderance of the evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). In determining whether to dismiss the legal action, the court must consider "the pleadings and supporting or opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a) (West 2015).

The TCPA defines "exercise of the right of free speech" as a communication made in connection with a matter of public concern. *Id.* § 27.001(3) (West 2015). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). A "communication" is defined to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The TCPA does not recognize a distinction between public and private communications as long as they are made in connection with a matter of public concern. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Further, the TCPA statutory analysis is not dictated by traditional First Amendment constitutional limitations. *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 204 (Tex. App.—Austin 2017, pet. dism'd) (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam)). Rather, we must apply the plain meaning of the TCPA as written, absent an ambiguity. *See Coleman*, 512 S.W.3d at 900 (holding court of appeals erred when it failed to apply the plain meaning of the statute by adding requirements not contained in TCPA).

We review questions of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered by the TCPA. *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.). We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged

3

claims. *Id.* We consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.). We view the pleadings and evidence in the light most favorable to the nonmovant when determining whether the TCPA applies.[1] *E. Tex. Med. Ctr. v. Hernandez*, No. 12-17-00333-CV, 2018 WL 2440508, at *1-2 (Tex. App.—Tyler May 31, 2018, pet. denied) (mem. op.); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214–15 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## Step One: Movant's Burden

Appellants argued to the trial court that Clements' misappropriation of trade secrets claim is "based on, related to, or in response to a communication made by defendants in exercising their right of free association with their current employers…their right of free speech is also implicated in the context of their alleged communications with their current employers." Further, Appellants submitted affidavits denying they disclosed or misappropriated Clements' confidential information. They argued that "[r]ather than compete in a fair and open manner for business, Clements…has chosen a path of harassment and frivolous litigation in [an] attempt to stifle its competition by filing this lawsuit" and that Clements is "seeking to create a de facto non compete obligation out of whole cloth."

In response, Clements argued that the motion to dismiss should be denied because Appellants intentionally waived their "right to freely associate and freely speak about Clements'…confidential information" by voluntarily signing the NDAs. Alternatively, Clements submitted an affidavit from its vice president, Chase Tarrant, as well as other documentary evidence in support of their contention that they established each element of their claim by clear and specific evidence.

There is no question that Clements' lawsuit seeking monetary and injunctive relief is a "legal action," a term that the TCPA defines to include "a lawsuit, cause of action, petition…or

---

[1] We recognize that our sister courts reached different conclusions about how deferentially to review the non movant's pleadings and evidence. Some courts have viewed the pleadings in the light most favorable to the non movant, while some have suggested a more neutral review. *Compare Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214–15 (Tex. App.—Houston [14th Dist.] 2014, no pet.) *with Entravision Commc'n Corp. v. Salinsas*, 487 S.W.3d 276, 282 (Tex. App.—Corpus Christi 2016, pet. denied). To the extent that evidence establishes material facts conclusively, our review would be limited to the de novo construction and application of the TCPA's terms. *Elite Auto Body,* 520 S.W.3d at 197. We will adhere to our own precedent when applying the standard of review. *See E. Tex. Med. Ctr. v. Hernandez*, No. 12-17-00333-CV, 2018 WL 2440508, at *1-2 (Tex. App.—Tyler May 31, 2018, pet. denied) (mem. op.).

any other judicial pleading or filing that requests legal or equitable relief." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6); *Elite Auto Body*, 520 S.W.3d at 197. Thus, the remaining elements of Appellants' initial burden can be met if Clements' misappropriation of trade secrets claim is predicated factually on conduct that falls within either the "exercise of the right of association" by Appellants or their "exercise of free speech" as the TCPA defines those terms. *Elite Auto Body*, 520 S.W.3d at 197. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," while the "exercise of the right of free speech" is "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2); (3). "Communication" is defined under the TCPA as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

Applying these definitions to Clements' pleadings, we conclude that Clements' misappropriation of trade secrets claim is "based on, relates to, or is in response to," at least in part, Appellants' "communications" among themselves and others within the Greenwell and ChemCo enterprise through which they have allegedly shared or utilized the information to which Clements claims trade secret protection. *See Elite Auto Body*, 520 S.W.3d at 198. Consequently, Appellants have shown that Clements' claim is based on, relates to, or responds to their exercise of a TCPA right and they satisfied their burden under the first step of the TCPA analysis. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also Lipsky*, 460 S.W.3d at 586. We, therefore, reject Clements' argument to the contrary.

Regarding Clements' argument that Appellants waived their TCPA rights, Clements cites *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 354 (Tex. App.—Dallas 2015, no pet.). In *Leibovitz*, an investment offerings company obtained an injunction against an investor which prohibited the investor from filing a complaint against the company because the investor entered a settlement agreement with the company that contained a confidentiality and non-disparagement clause. *Id.* at 337-40. Accordingly, because the investor agreed in a written contract to a restriction on his speech, the Dallas Court of Appeals rejected the investor's argument that the injunction was an illegal prior restraint on speech. *Id.* at 353-54.

With respect to the present case, we are not persuaded that *Leibovitz* supports the contention that Appellants waived their rights under the TCPA by signing NDAs. Recently, the

Dallas Court of Appeals considered a similar argument, and held that whether a movant contractually limited her rights was not a consideration under the first step of the TCPA analysis. *Elliott v. S&S Emergency Training Sols., Inc.*, No. 05-16-01373-CV, 2017 WL 2118787, at *2 (Tex. App.—Dallas May 16, 2017, pet. granted) (mem. op.). Rather, the Dallas Court explained that, to meet the threshold determination, the movant need only show that it exercised a statutory right under the TCPA. *Id*. Absent authority to the contrary, we are bound by the text of the TCPA. *See id*. Because the TCPA only required that Appellants establish that they exercised a statutory right under the TCPA, we need not address the NDAs at this stage of the analysis. *See id.*; *Lipsky*, 460 S.W.3d at 586.

**Step Two: Nonmovant's Burden**

Having concluded that Appellants met their burden under step one of the TCPA analysis, we now determine whether Clements established by clear and specific evidence a prima facie case for each essential element of its misappropriation of trade secrets claim. *Lipsky*, 460 S.W.3d at 587. In making this determination, we consider the pleadings and any supporting and opposing affidavits. *Id.* Clear" means "unambiguous, sure or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Id.* at 590. A prima facie case is evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* It is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. *Id*. However, the TCPA does not impose an elevated evidentiary standard, and circumstantial evidence and rational inferences may be considered. *See id.* at 590-91. But it requires more than mere notice pleading, and general allegations that merely recite the elements of a cause of action will not be sufficient. *Id.* Instead, a plaintiff must provide enough detail to show the factual basis for its claim. *Id.* at 591.

Texas courts differ in their standards when evaluating the evidence in the second step of the TCPA analysis. For instance, some courts have held that the reviewing court should consider only the pleadings and evidence in favor of the nonmovant's case. *See, e.g.*, *Fawcett v. Grosu*, 498 S.W.3d 650, 661 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 480–81 (Tex. App.—Dallas 2015) ("We do not consider whether the defendant presented evidence rebutting the plaintiff's case...."), *aff'd in part on other grounds, rev'd in part on other grounds*, 529 S.W.3d 429 (Tex. 2017). Other courts have reviewed all the evidence in the light most favorable to the nonmovant, allowing the movant to rebut the

6

prima facie case when the true facts are conclusively shown by other evidence. *See, e.g.*, ***Warner Bros. Entm't, Inc. v. Jones***, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017, pet. filed).

Texas courts have held the trial court's role is not to act as a factfinder and to resolve opposing reasonable inferences in determining whether the plaintiff satisfies the prima facie proof requirement. *See* ***Dallas Morning News, Inc. v. Hall***, 524 S.W.3d 369, 378 (Tex. App.—Fort Worth 2017, pet. granted). Instead, the court determines whether the nonmovant met his burden to produce evidence sufficient to present a prima facie case as required by the TCPA, some of which may include relevant evidence from which more than one reasonable inference may be drawn. *See* ***id***.

### *Texas Uniform Trade Secrets Act*

Clements sued Appellants for misappropriation of trade secrets. Because the misappropriation allegedly occurred after September 1, 2013, the Texas Uniform Trade Secrets Act (TUTSA) governs the claim. Act of May 2, 2013, 83rd Leg., R.S., ch. 10, 2013 Tex. Gen. Laws 12 (*codified at* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001-134A.008 (West Supp. 2018)). The elements of misappropriation of trade secrets are (1) ownership of a trade secret; (2) misappropriation of the trade secret; and (3) an injury, if the plaintiff is seeking damages. TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.002(1), (3), (6), 134A.004(a).

### *Ownership of a Trade Secret*

In defining what constitutes a trade secret, the TUTSA states:

> Information subject to trade secret protection includes formulas, patterns, compilations, programs, devices, methods, techniques, processes, financial data, and lists of actual or potential customers or suppliers that (1) the plaintiff has taken reasonable efforts to keep secret and (2) has actual or potential independent economic value to third parties because it is not generally known and not readily ascertainable by proper means.

***Id.*** § 134A.002(6).[2]

---

[2] Prior to the TUTSA, Texas courts considered six factors as a guide to determine if a trade secret existed: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of the measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease of difficulty with which the information could be properly acquired or duplicated by others. *See, e.g.,* ***In re Bass***, 113 S.W.3d 735, 739 (Tex. 2003). The TUTSA is considered broader than the common law, thus, making it less difficult for the business owner to establish trade secret status. *See* Michelle Evans*, Determining What Constitutes A Trade Secret Under the New Texas Uniform Trade Secrets Act (TUTSA)*, 46 Tex. Tech L. Rev. 469, 473 (2014).

In its petition, Clements states that it spent considerable time and resources developing its proprietary "[s]alt [b]ridge [p]ills and [s]ystems" and took reasonable precautions to prevent disclosure of this information to third parties. Clements states that the information is not readily ascertainable by its competitors and has given them a valuable economic and competitive advantage in the oil and gas services industry. Tarrant's affidavit states that "Clements Fluids has a specific and proprietary way it performs every aspect of [s]alt [s]ystems" which is a "highly specialized system addressing loss of circulation and is not a common system utilized in the oil and gas market." Tarrant states that

> Clements Fluids' confidential and proprietary formula for salt bridge systems and salt bridge pills, including…the pounds per barrel used in the systems and pills…are not available through any [outside] source.

Further, in his affidavit, Tarrant outlines Clements' protocols for maintaining the secrecy of its salt systems by (1) requiring all employees and contractors working on salt systems to execute NDAs; (2) emphasizing the confidential nature of its business in its offer letters and employee handbook; (3) periodically reminding employees of their obligations pursuant to the NDAs; (4) closing its work sites to the public; (5) password protecting all its computers; (6) avoiding communicating details regarding salt systems in writing with clients; and (7) limiting disclosure of confidential and proprietary information to employees working on salt systems.

Tarrant states that salt systems account for approximately thirty five to forty percent of Clements' sales in "South Texas and Henderson." He further notes that Clements' salt systems are valuable to its competitors because Pioneer hired Clements' former employees and launched its own salt systems plants. Tarrant states that Clements

> invested millions of dollars in research, development, training, and testing to develop its [s]alt [s]ystems…it has taken…almost 33 years, millions of dollars, trial and error, and hard work to make its [s]alt [s]ystems as successful as it is.
> Clements Fluids' proprietary and confidential information related to [s]alt [s]ystems would be very difficult to properly acquire or duplicate. It took…almost 33 years, millions of dollars, trial and error, and hard work to develop. It would take…competitors no less to properly acquire or duplicate the information.

8

Tarrant also states that Clements "is the leader in completion [s]alt [s]ystems…if competitors knew the same information [Clements], knows they would be doing the same work and Clements Fluids would not be leading the industry."

Thus, based on the foregoing, we conclude that Clements established by clear and specific evidence that it owns a trade secret as defined by the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6).[3]

### *Misappropriation*

To prove an action for misappropriation of trade secrets, a plaintiff must establish that the defendant misappropriated the trade secret. *See id.* § 134A.002(3). A defendant can misappropriate a trade secret either by acquiring it with knowledge of improper means or by using or disclosing it without consent. *Id.* The plaintiff can prove the defendant misappropriated a trade secret by showing that the defendant disclosed or used the trade secret without express or implied consent and (1) acquired the trade secret through improper means, or (2) at the time of the disclosure or use, knew or had reason to know the trade secret was (a) obtained from someone who had acquired it through improper means, (b) acquired under circumstances giving rise to a duty to maintain its secrecy or use, or (c) derived from or through a person who owed the plaintiff a duty to maintain its secrecy or limit its use. *Id.* § 134A.002(3)(B)(ii).

Clements' petition alleges that Appellants had no knowledge or experience in salt systems prior to their employment with Clements. Clements states that it provided Appellants with the "totality of [Appellants'] training and knowledge in [s]alt [b]ridge [p]ills and [s]ystems…[s]uch training and information is proprietary and confidential." Further, Clements attached Appellants' signed NDAs wherein Appellants agreed not to disclose Clements' confidential business information or use it outside of their employment with Clements. Clements further stated that Appellants received access to confidential information regarding its salt systems and were trained on how to perform salt systems jobs. Clements alleges that "[u]pon information and belief, in violation of their Agreements, Defendants have disclosed Plaintiffs' confidential business information to third parties, including Plaintiffs' competitors." Clements' application for temporary restraining order alleges that Morgan and McAnally began working on a salt systems job for Greenwell on February 4, 2018, using Clements' proprietary and confidential information

---

[3] In their briefing, Appellants do not contest that some of the information Clements alleges Appellants misappropriated could constitute trade secrets.

9

provided to them by Clements. Clements further alleges that Laney works for ChemCo using Clements' proprietary and confidential information.

Tarrant's affidavit explains that Appellants were hired and trained by Clements to work on salt systems. He details Morgan, McAnally, and Laney's resumes at the time they were hired by Clements to demonstrate their lack of experience in salt systems prior to their employment with Clements. Tarrant states that Clements shared with Appellants (1) the formula used, including pounds per barrel, in its salt bridge systems and pills; (2) the raw products used; (3) the suppliers of the raw products; (4) the technique of mixing the raw products; (5) the additives to use in different well conditions; (6) the rate of mixing; (7) the most efficient ways to rig up mixers; and (8) the specifications, modifications, and uses of custom equipment for salt systems. Tarrant states that

> [s]hortly after Mr. McAnally's employment relationship with Clements Fluids was terminated, Mr. McAnally went to work for a company that was not currently doing [s]alt [s]ystems jobs in Texas. Mr. Morgan resigned from Clements Fluids and went to work for the same company as Mr. McAnally. Clements is the leader in [s]alt [s]ystems in Texas. In fact, prior to Mr. Morgan and Mr. McAnally going to work for another company, and that company starting its first [s]alt [s]ystems job, Clements Fluids did 100% of the [s]alt [s]ystems job [sic] for its customer, Pioneer. Salt systems is a highly specialized system addressing loss circulation and is not a common system utilized in the oil and gas market. It is a small community. Clements Fluids is typically aware if other companies perform [s]alt [s]ystems because Clements Fluids has a good relationship with its customer and they let us know if they are giving another company work.
>
> The company that Mr. Morgan and Mr. McAnally went to work for after Clements Fluids[,] was not doing [s]alt [s]ystems jobs before Morgan and McAnally began working for it. I know this because of information on the company's website. Exhibit 1-D, Greenwell Blogs. That company reported the launch of its first "salt systems mixing plants" through a blog post written by Mr. McAnally on January 2, 2018. Mr. McAnally announced that the company's salt system was "fully tested and ready for deployment." That was approximately three and a half months after Mr. McAnally was no longer employed by Clements Fluids, plenty of time to get a salt systems plant up and running if the company were able to avoid the necessity and expense of trial and error and using the shortcuts Mr. McAnally's training by Clements Fluids provided. Mr. Morgan and Mr. McAnally's employer, now a competitor of Clement Fluids, "deployed its salt system mixing plant for its first job in the Permian" on February 5, 2018, a mere two days after Mr. Morgan resigned from Clements Fluids to work for its now-competitor, and reported it on its website on the 8th. Before Morgan and McAnally went to work for their current employer, and it started its salt systems, Clements Fluids would have gotten the salt systems job because no other company had the means to perform the work.

Appellants argue that Clements failed to make a prima facie case as to the misappropriation element, because it failed to show that Appellants actually used Clements' trade secrets. Morgan and McAnally submitted affidavits stating that Clements did not provide them with any training that they did not already have prior to their employment with Clements and denying that they

10

shared any information gained from Clements to any third party. Laney submitted an affidavit denying disclosure of any information he learned from Clements to any third party. Appellants argue that Clements' evidence is insufficient to establish that they used trade secrets, because Clements only established that Appellants went to work for competitors that set up competing divisions to perform salt jobs. In support of their argument, they cite *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018). In *GE Betz*, an employer sued a former employee for misappropriation of trade secrets after the former employee went to work for a competitor. *Id.* at 321-22. The employer presented evidence that (1) the former employee created a business plan to sacrifice profit margin in order to gain market share; (2) the employee emailed the employer's most recent financial data to herself on an outside account on her last day at work and downloaded 27,000 GE files in a deceptive manner; and (3) the employee's new employer had success with the very clients whose financial data she sent to herself. *Id.* at 326. With respect to the business plan, the employer argued that "it was reasonable to infer that [the employee] used knowledge of [the employer's] cost structure in order to acquire that market share." *Id.* The court disagreed because the business plan was created before the employee was hired by the competitor and, further, because sacrificing profit margins to achieve market share is a natural goal for a business in its infancy and "it would be unreasonable to infer this broadly stated objective that [the employee] planned to use [the employer's] trade secrets at the time she interviewed with [the competitor]— much less that she actually *did* so." *Id.* Further, the court held that the competitor's success with clients whose information the employee allegedly misappropriated did not support an inference that the success was a result of misappropriation of the employer's trade secrets, in part, because the competitor had a preexisting relationship with the customers. *Id.* at 326-27. The court did not explain why it placed little significance on the employee's conduct in emailing herself the former employer's financial data and downloading several thousand files, except that "[the former employer] asks the court to collapse the improper acquisition prong and the use prong of the misappropriation of trade secrets cause of action." *Id.* at 327.

We do not find the court's analysis in *GE Betz* to be helpful in conveying why the circumstantial evidence in that case fell short of creating a fact issue. Further, in *GE Betz*, the former employer was unable to identify how its financial information was capitalized upon by the employee to obtain a benefit. *Id.* at 326. In this case, Clements established that (1) Appellants had no knowledge or experience in salt systems prior to their employment with Clements; (2)

11

Clements trained Appellants to perform salt systems, and disclosed their proprietary formula to them; (3) Morgan and McAnally left Clements and went to Greenwell, a company that was not then performing salt systems; (4) shortly after Morgan and McAnally joined Greenwell, Greenwell launched a salt systems business and announced its development in a post authored by McAnally on its website; and (5) Greenwell performed a salt systems job for Pioneer, one of Clements' customers. Given Clements' description of the time, money, and effort dedicated to the development of its salt systems, it is reasonable to conclude from the totality of the circumstantial evidence that Morgan and McAnally used Clements' proprietary and confidential information in concert with Greenwell to launch its salt systems business. *See Lipsky*, 460 S.W.3d at 591; *see also SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) (proof of trade secret misappropriation often depends on circumstantial evidence). Even considering all the evidence in light the most favorable to the nonmovant, including Appellants' affidavits, we hold that Clements satisfied its burden to present clear and specific evidence to make a prima facie case for the element of misappropriation as to Morgan and McAnally. TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002 (3)(B)(ii)(b); *see, e.g.*, **Warner Bros. Entm't, Inc**., 538 S.W.3d at 801; *see also Lipsky*, 460 S.W.3d at 591.

However, with respect to Laney, Clements has not met its burden. The pleadings indicate that "Laney currently works for Plaintiffs' competitor, ChemCo, using the proprietary and confidential training and other confidential information provided to him by Plaintiffs." In its response to the motion to dismiss, Clements pointed out that Laney's affidavit, attached to his motion to dismiss, states that he was working for Clements' competitor as the "salt system manager." Tarrant's affidavit states that Laney went to work for a new employer and contacted two Clements' employees "saying he was back in the salt business and looking for guys to work on [s]alt [s]ystems." Unlike the evidence with respect to Morgan and McAnally, Clements points to no evidence, circumstantial or otherwise, that Laney disclosed or used Clements' trade secrets. There is no evidence in the record to establish whether ChemCo performed salt systems jobs prior to Laney's employment with ChemCo, nor is there any evidence that establishes Laney performed any salt systems jobs with ChemCo.

*Injury*

Under the TUTSA, a plaintiff is only required to show an injury if it seeks damages in addition to injunctive relief. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.004(a). Clements

sought damages in its petition thus, it must establish by clear and specific evidence a prima facie case for an injury. A plaintiff can recover the actual loss caused by the misappropriation. **Id.** The burden of proof on damages for misappropriation of trade secrets is liberal and is satisfied by showing the misappropriation, the defendant's subsequent commercial use, and evidence by which the jury can value the rights the defendant obtained. *Cf.* **Premier Lab Sup. V. Chemplex Indus.**, 94 So. 3d 640, 644 (Fla. Dist. Ct. App.—4th Dist. 2012) (interpreting Florida Uniform Trade Secrets Act).[4] The Texas Supreme Court has not required that the plaintiff establish a specific amount of damages in the TCPA analysis. *See* **Lipsky**, 460 S.W.3d at 592–93. Under the TCPA, Clements need only adduce evidence supporting a rational inference as to the existence of damages, not their amount or constituent parts. *See* **Deuell v. Tex. Right to Life Comm., Inc.**, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding plaintiff not required to show amount of damages in a tortious interference case during TCPA portion of proceedings).

Appellants argue that Clements failed to link the loss of the Pioneer job to Appellants' alleged misappropriation of trade secrets. We disagree. The circumstantial evidence provided by Clements illustrates that (1) Greenwell did not perform salt systems jobs prior to Morgan and McAnally joining the company; (2) Greenwell launched a salt systems plant, announced on its website by McAnally, shortly after Morgan and McAnally joined the company; (3) Greenwell performed a salt systems job for Pioneer shortly after Morgan and McAnally joined the company; and (4) Clements performed all of Pioneer's salt systems jobs prior to Morgan and McAnally joining Greenwell. This is sufficient to link Morgan and McAnally's alleged misappropriation to Clements' loss of Pioneer's business. *See* **Lipsky**, 460 S.W.3d at 591.

Further, Appellants argue that Clements failed to present evidence of lost revenue or profits attributed to Appellant's alleged misappropriation. Tarrant's affidavit states that salt systems, which he describes as taking thirty-three years and millions of dollars to develop, compose thirty five to forty percent of its sales in South Texas and Henderson. Clements is not required to offer a specific amount of damages but must provide enough evidence to support a rational inference of damages. *See* **Lipsky**, 460 S.W.3d at 592–93; *see also* **Deuell**, 508 S.W.3d at 689. While Clements must show how Appellants caused its damages, it need not show the specific amount of losses with exactitude. *See* **Lipsky**, 460 S.W.3d at 592–93; *see also* **Deuell**, 508 S.W.3d at 689. While

---

[4] The Florida Uniform Trade Secrets Act is very similar to the TUTSA. *See generally*, Fla. Stat. Ann. §§ 688.001-388.009 (West 2018).

Clements may be required to prove the amount of its damages with more specificity at trial, it has satisfied its burden under the TCPA.

**Attorney's Fees**

The TCPA requires the trial court to award court costs, reasonable attorney's fees, and other expenses to the movant upon dismissal of "a legal action" under the TCPA. TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1) (West 2015). When the appellate court holds that the plaintiff failed to discharge his burden to prove a prima facie case under the TCPA as to some of his causes of action, but that he successfully met his burden on other causes of action, it must remand the case to the trial court for a determination of the proper amount of fees, costs, and expenses to award the movant. *See **Rosenthal***, 529 S.W.3d at 441–42; ***Serafine***, 466 S.W.3d at 364.

The trial court did not award Appellants any fees because it found that the TCPA did not apply to Clements' claims or, alternatively, that Clements met its burden under the TCPA to establish a prima facie case on all of its causes of action. We have held that Clements failed to meet its burden of proving, by clear and specific evidence, a prima facie case on its misappropriation of trade secrets claim against Laney. Accordingly, we remand the case so that the trial court may exercise its discretion and determine the proper amount of fees, costs, and expenses to award Laney. *See **Rosenthal***, 529 S.W.3d at 441–42; ***Serafine***, 466 S.W.3d at 364.

Having held that Clements met its burden to prove, by clear and specific evidence, a prima facie case on misappropriation of trade secrets against Morgan and McAnally, we overrule Appellant's first issue in part and sustain in part.

**INJUNCTION**

In Appellants' second issue, they argue that the trial court abused its discretion because the temporary injunction is (1) not supported by sufficient evidence and (2) overbroad.[5]

**Standard of Review and Applicable Law**

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. ***Health Care Serv. Corp. v. E. Tex. Med. Ctr.***, 495 S.W.3d 333, 337 (Tex. App.—Tyler 2016, no pet.). To obtain a temporary injunction, the applicant

---

[5] Appellants also argue the temporary injunction failed to contain a trial date, rendering it void. However, the record reflects that the trial court signed an order dissolving the original temporary injunction and entering a new temporary injunction which contains a trial date. Accordingly, we will not address this subpart of Appellant's second issue.

must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.).

The decision to grant or deny a temporary injunction lies within the sound discretion of the trial court. *Health Care Serv. Corp.*, 495 S.W.3d at 338. A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Id.* When we review a trial court's order on an application for temporary injunction, we cannot substitute our judgment for that of the trial court even if we would have reached a different conclusion. *Institutional Securities Corp. v. Hood*, 390 S.W.3d 680, 683 (Tex. App.—Dallas 2012, no pet.). Instead, we review the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order is so arbitrary that it exceeds the bounds of reasonable discretion. *Id.* The trial court does not abuse its discretion when it bases its decision on conflicting evidence, or when some evidence of substantive and probative character exists to support its decision. *Health Care Serv. Corp.,* 495 S.W.3d at 337. An abuse of discretion arises when the trial court misapplies the law to the established facts of the case or when it concludes that the movant has demonstrated a probable injury or a probable right to recovery, and the conclusion is not reasonably supported by the evidence. *Id.*

## The Temporary Injunction Language

The temporary injunction is based on Clements' claims for breach of contract and misappropriation of trade secrets. The four restrictions in the temporary injunction state that Appellants shall:

(1) not, directly or indirectly, disclose, use or divulge [c]onfidential [b]usiness [i]nformation of Plaintiffs or make use of it for their own purpose or the purpose of another;

(2) not, for one (1) year after the termination of Defendants' employment relationship with Plaintiffs, directly or indirectly, solicit for employment or hire any employee of Plaintiffs, or employee of any entity with whom Defendants may have had contact or who became known to Defendants in connection with their relationship with Plaintiffs; and

(3) not, directly or indirectly, work, consult, oversee, manage, or counsel on [s]alt [b]ridge [p]ills and/or [s]ystems, including, but not limited to, processes involving: (1) proprietary formulas; (2) strategies; (3) policies and procedures for rig-up of equipment; (4) proprietary training related to mixing, additives, and products; (5) design and operation of custom equipment; (6) operating procedures; and (7) troubleshooting strategies

(4) refrain from destruction of any documents, evidence, or record (electronic or otherwise) which relates to any of the matter implicated in this lawsuit, including, but not limited to, all hard drives, backups, archives, email and text message in-boxes and sent boxes, and possible sources of stored metadata or information.

## Evidence Supporting the Temporary Injunction

Appellants argue that (1) the trial court abused its discretion by signing the injunction because Clements did not establish a probable right of recovery; (2) Clements "presented no evidence of any use of the alleged trade secret information by Appellants in their current employment positions[;]" and (3) much of the information Clements contends is confidential and proprietary information is generally known in the oil field industry. In support of their position, they direct us to the testimony of Tarrant and Taylor Mahan, Clements' operations manager, to establish that there are alternative methods of performing salt bridge competition jobs which would not infringe upon Clements' trade secrets. Appellants also point out that Tarrant conceded he has no actual knowledge that McAnally or Morgan used Clements' blend on the job they performed for Pioneer. Further, Appellants point to Tarrant's testimony that he has no knowledge that Laney performed any salt bridge completion work since he left Clements. Appellants argue that this testimony, coupled with Appellants' testimony denying they misappropriated Clements' confidential information, renders the evidence insufficient to support the temporary injunction.

At the temporary injunction hearing, Clements called witnesses that testified to essentially the same facts and assertions contained in Tarrant's affidavit. While the record contains conflicting evidence, we must view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Hood,* 390 S.W.3d at 683. Given the totality of the circumstantial evidence presented by Clements, discussed earlier in the TCPA analysis, we do not conclude the trial court acted arbitrarily in finding that Clements established a probable right of recovery with respect to Morgan and McAnally. *See id.*; *see also Health Care Serv. Corp.,* 495 S.W.3d at 337.

However, with respect to Laney, Clements' evidence is lacking. As previously discussed, Tarrant's affidavit states that Laney went to work for a new employer and contacted two Clements' employees "saying he was back in the salt business and looking for guys to work on [s]alt [s]ystems." At the temporary injunction hearing, Mahan testified that Laney sent him a text message stating that he was back in the salt business. Mahan explained that he assumed Laney

16

was attempting to get Mahan to come work with him but clarified that Laney did not explicitly say that in the message. Tarrant testified that, to his knowledge, Laney has not performed any salt systems jobs since he left Clements but was included in Clements' lawsuit based on the text message sent to Mahan. Laney's declaration, attached to his TCPA motion to dismiss, acknowledges that he is employed by ChemCo as its salt systems manager and that ChemCo obtained its salt systems equipment from the same supplier as Clements. As discussed in the TCPA analysis, this evidence does not establish that Laney used or disclosed any of Clements' confidential or proprietary information. Moreover, it does not establish that Laney breached the NDA because Clements offered no evidence establishing when the text messages were sent. The NDA's non-solicitation provision is limited to one year after the termination of employment, and according to Laney's declaration, he left Clements in March 2016. Thus, Clements did not establish that Laney breached the non solicitation provision of the NDA because it is unclear if Laney sent the text messages within the one year prohibition, or after it expired. Because the evidence does not reasonably support a probable right of recovery against Laney, the trial court abused its discretion by entering the temporary injunction against Laney. *See Health Care Serv. Corp.,* 495 S.W.3d at 337.

**Overbreadth**

Appellants argue that the temporary injunction is overbroad because it prohibits them from using information generally known in the industry and from engaging in legal business competition with Clements.

Although a temporary injunction should be broad enough to safeguard a party's protectable interests pending a trial on the merits, it should not be so broad that it prohibits the restrained party from engaging in lawful activities that are a proper exercise of its rights. *Cooper Valves, LLC v. ValvTechnologies, Inc.*, 531 S.W.3d 254, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In this case, Clements' witnesses acknowledged that there are other methods of performing salt systems jobs without utilizing Clements' trade secrets and that other companies have the capability to perform salt systems jobs outside of Clements. However, restriction three of the temporary injunction states that Appellants cannot "directly or indirectly, work, consult, oversee, manage, or counsel on [s]alt [b]ridge [p]ills and/or [s]ystems." Thus, it prohibits Appellants from engaging in lawful activities, i.e., performing salt systems jobs for companies not utilizing Clements' methods. *See id.*; *see also T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 25-26

(Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). Thus, we hold that restriction three is overbroad and, consequently, the trial court abused its discretion as to this restriction. *See **Harbor Perfusion, Inc. v. Floyd***, 45 S.W.3d 713, 718 (Tex. App.—Corpus Christi 2001, no pet.) (reviewing the scope of a temporary injunction for abuse of discretion). Thus, we sustain issue two in part.

We may modify an overbroad injunction. ***T-N-T Motorsports, Inc.****,* 965 S.W.2d at 25. Accordingly, we order that restriction three be reformed as follows to limit Appellants from utilizing Clements' trade secrets to perform salt systems jobs:

1. not, directly or indirectly, ***disclose, use, or divulge Plaintiff's confidential business information to*** work, consult, oversee, manage, or counsel on [s]alt [b]ridge [p]ills and/or [s]ystems, including, but not limited to, processes involving: (1) proprietary formulas; (2) strategies; (3) policies and procedures for rig-up of equipment; (4) proprietary training related to mixing, additives, and products; (5) design and operation of custom equipment; (6) operating procedures; and (7) troubleshooting strategies.

(Emphasis on language ordered to be added).

### CONCLUSION

We have ***sustained*** portions of Appellants' first and second issues. Accordingly, we ***reverse*** the portion of the trial court's order denying Laney's TCPA motion to dismiss, and we ***render*** judgment ***dismissing*** Clements' misappropriation of trade secrets claim against Laney. We ***remand*** the case to the trial court to determine the proper amount of fees, costs, and expenses to award Laney pursuant to the TCPA. The portion of the trial court's judgment denying Morgan and McAnally's TCPA motion to dismiss is ***affirmed.***

We ***reverse*** the portion of the trial court's order granting a temporary injunction against Laney, and ***dissolve*** said injunction. Further, we ***reform*** restriction three of the temporary injunction against Morgan and McAnally. The trial court's order granting a temporary injunction against Morgan and McAnally, as ***reformed***, is ***affirmed***.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 5, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 5, 2018**

**NO. 12-18-00055-CV**

**CHRISTOPHER ADAM MORGAN,**
**GARY LEE MCANALLY AND DOUGLAS RAY LANEY,**
Appellants
V.
**CLEMENTS FLUIDS SOUTH TEXAS, LTD.**
**AND CLEMENTS FLUIDS HENDERSON, LTD.,**
Appellees

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 18-0292-C)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the portion of the trial court's order denying Laney's TCPA motion to dismiss be **reversed**, and judgment **rendered dismissing** Clements' misappropriation of trade secrets claim against Laney. It is further ORDERED ADJUDGED and DECREEED the case be **remanded** to the trial court to determine the proper amount of fees, costs, and expenses to award Laney pursuant to the TCPA. The portion of the trial court's judgment denying Morgan and McAnally's TCPA motion to dismiss is **affirmed.**

It is further ORDERED, ADJUDGED and DECREED that the portion of the trial court's order granting a temporary injunction against Laney is **reversed**, and said injunction is **dissolved**.  Further, in accordance with this Court's opinion of this date, restriction three of the temporary injunction against Morgan and McAnally is **reformed** as follows:

> not, directly or indirectly, ***disclose, use, or divulge Plaintiff's confidential business information to*** work, consult, oversee, manage, or counsel on [s]alt [b]ridge [p]ills and/or [s]ystems, including, but not limited to, processes involving: (1) proprietary formulas; (2) strategies; (3) policies and procedures for rig-up of equipment; (4) proprietary training related to mixing, additives, and products; (5) design and operation of custom equipment; (6) operating procedures; and (7) troubleshooting strategies.

The trial court's order granting a temporary injunction against Morgan and McAnally, as **reformed**, is **affirmed**; and costs of this appeal are hereby adjudged against the party incurring same in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*