**AFFIRMED and Opinion Filed February 23, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00079-CV**

**IN RE: THE COMMITMENT OF KEVIN WAYNE ALLEN**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CV-1970002**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

A jury found that appellant Kevin Wayne Allen is a sexually violent predator as defined in the Texas Civil Commitment of Sexually Violent Predators Act (the Act). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.151. The trial court rendered judgment on the jury's verdict and ordered him civilly committed for treatment and supervision under the Act.

In two issues, appellant argues the trial court erred by (i) allowing the State's expert to testify about a non-testifying expert's opinion that appellant has a behavioral abnormality, and (ii) allowing appellant to give lay opinion testimony about his risk for reoffending. We affirm the trial court's judgment.

## I. BACKGROUND

Appellant has three convictions for sexual offenses. In 1981, he pleaded guilty to attempted rape and was sentenced to five years in prison. He was released on mandatory supervision in 1983. One month after his release, he committed sexual assault by threatening to use physical force and violence and was sentenced to eight years in prison. Appellant was released, and later, in 1996, was convicted of aggravated sexual assault. He was sentenced to twenty-five years in prison for that offense.

The State filed a petition requesting that appellant be found a sexually violent predator and that he be committed pursuant to the Act. Specifically, the State alleged that an expert had performed a clinical assessment and found that appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Appellant was incarcerated when the petition was filed, but his entry into the TDCJ Sex Offender Treatment Program was pending, which could have resulted in his release prior to his September 2021 sentence discharge date. The State sought to have appellant committed for treatment and supervision.

The case was tried to a jury. "Pen packets" reflecting appellant's convictions for three sexually violent offenses were admitted into evidence.[1]

---

[1] A "pen packet" is a document compiled by a prison official based upon other primary documentation that is received from the clerk of the convicting court. *See Flowers v. State*, 220 S.W.3d 919, 923, n.14 (Tex. Crim. App. 2007). A pen packet is admissible to show a defendant's prior criminal record provided it is properly authenticated. *Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991).

The State called two witnesses, Dr. Timothy Proctor, a psychologist, and appellant. Prior to trial, Dr. Proctor was asked to evaluate whether appellant has a behavioral abnormality. In performing these types of evaluations, Dr. Proctor reviews various records, including police, court, and medical records, other psychological evaluations and interviews, prison records, sex offender treatment records, and depositions. After reviewing the records, Dr. Proctor conducts a face-to-face evaluation and administers certain psychological tests. He then scores the tests and forms a working opinion. As he receives more information, he reevaluates his opinion up to the time he testifies. Dr. Proctor followed this methodology in his evaluation of appellant.

The records that Dr. Proctor reviewed included a previous evaluation of appellant done by Dr. Charles Woodrick. Dr. Woodrick concluded that appellant had a behavioral abnormality. Likewise, Dr. Proctor ultimately concluded that appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

Dr. Proctor testified that there is no one measure or test that will determine whether a person has a behavioral abnormality. Rather, there are psychological testing instruments that aid in the evaluator's assessment. Three of the tests Dr. Proctor employed include the Static-99, the Risk of Sexual Violence Protocol (RSVP) and the Psychopathy Checklist Revised (PCL-R).

The Static-99 is a list of ten risk factors associated with reoffending sexually. The typical sex offender scores a two. Appellant scored a six, which places him in the well-above-average group.

The RSVP is another list of risk factors Dr. Proctor used to make sure that he considered other variables that may not be on the Static-99. This list is not created mechanically from a research study. Instead, the list was created by experts who reviewed the literature and research and identified the risk factors they deemed most important.

The PCL-R measures if a person has a severe form of anti-social personality called psychopathy. Most experts consider a score of thirty out of forty as the cut-off for finding psychopathy. Appellant scored twenty-two, which Dr. Proctor characterized as "near the high range." Dr. Proctor does not consider appellant a psychopath because his score was not over thirty. Nonetheless, appellant's score does support Dr. Proctor's finding that appellant has antisocial personality disorder and an increased likelihood to reoffend.

Antisocial personality disorder is centered around breaking the rules and the law and it is a chronic (long term) condition. In making this diagnosis, Dr. Proctor considered appellant's nonsexual criminal history, including arrests for motor vehicle theft, cocaine possession, and assault. He also considered a pattern of juvenile delinquent conduct.

Dr. Proctor also used the Diagnostic Statistical Manual (DSM) to diagnose appellant as being sexually deviant and suffering from sexual sadism disorder. The DSM lists different mental disorders and the criteria to determine if someone has that condition. Sexual sadism is defined as one who is sexually aroused by sexual thoughts, fantasies, or behaviors that involve sexual activity, and the pain and suffering of other people. This diagnosis is supported by appellant's history of repeated sexual acts with nonconsenting persons who were experiencing pain and suffering by the acts, and by specific behaviors beyond just gaining compliance, such as having a victim beg him not to hurt her.

Dr. Proctor used the Static-99 and RSVP to identify risk factors specific to appellant. Those factors include: chronicity of sexual violence, escalation of sexual violence, use of physical force, a history of convictions for sexual offenses, a history of sexually violent offense recidivism after punishment, unrelated victims, stranger victims, a history of non-sexual violence convictions, sexual promiscuity/problems with intimate relationships, non-sexual violence, antisocial lifestyle, and problems with supervision. Dr. Proctor explained the specifics of appellant's behavior that he considered in assessing these factors.

Dr. Proctor also considered protective factors. Protective factors are the opposite of risk factors: they are things that reduce a person's risk for some type of behavior. The protective factors Dr. Proctor identified for appellant were his age and the fact that he was currently undergoing a sex offender treatment program.

Dr. Proctor interviewed appellant in prison, and they discussed appellant's sexual offenses. Appellant told Dr. Proctor about his first offense when he was seventeen and pulled a fifteen-year-old girl into a closet. Appellant pulled out his penis and asked the girl to perform oral sex on him. The victim was scared and told appellant she saw someone looking in the window. Appellant told her to pretend to be his girlfriend and act like nothing happened and he would not hurt her. Appellant also told the victim to beg him not to hurt her. Appellant admitted making this statement and said that he did so to have power over [the victim]. Appellant's version of events was consistent with the records Dr. Proctor reviewed, but Dr. Proctor observed that appellant gave varying accounts of the incident to different interviewers. This was significant because it limited the weight to be afforded appellant's self-reporting and acceptance of responsibility.

Appellant and Dr. Proctor also discussed appellant's second offense; sexual assault by threatening physical force and violence. On that occasion, an adult female was walking outside when appellant grabbed her from behind, tore her bodysuit off and sexually assaulted her. Appellant admitted that he had sex with the victim without her consent. He said that he committed the offense because he had just gotten out of prison and was mad at the world. Dr. Proctor found it significant that appellant committed this offense while on mandatory supervision because such behavior is a risk factor for reoffending.

Appellant also told Dr. Proctor about a sexual offense he committed during a robbery. The victim was waiting for a bus when appellant grabbed her, forced her behind a grocery store, forced her to have vaginal intercourse and to perform oral sex, and stole $90 from her. Appellant was convicted of robbery and denied the sexual offense aspect of the crime in his deposition.

Dr. Proctor also inquired about appellant's conviction for aggravated sexual assault. During that offense, appellant brandished a long-bladed knife, threatened the victim, and forced her to have vaginal intercourse and perform oral sex. Appellant denied that he committed the offense. During his deposition, he further denied sexually assaulting the victim. Instead, he claimed that the victim was a prostitute who alleged he sexually assaulted her because she was not paid.

Appellant testified about behavioral problems he had as a child. He acknowledged that he was sent to a juvenile facility twice.

Appellant began watching pornography depicting rape scenes when he was about four years old. As a teenager, he watched pornography about three times a week.

Appellant admitted to the attempted rape of the fifteen-year-old girl and to committing another sexual offense when he was on mandatory supervision. But he denied that he forced the victim to have sex with him when he was subsequently convicted for aggravated sexual assault. He admitted, however, that his version of events concerning that conviction varied over the years.

Appellant is currently undergoing sex offender treatment. He said that he is telling the treatment provider what is in the police report because he believes that is what the provider wants to hear, but it is not actually the truth. Appellant said that he will do whatever it takes to get out of prison, even if it means saying something that he claims didn't happen.

Appellant also denied committing a sexual offense in connection with his robbery conviction. He said he told Dr. Proctor he committed the sexual offense because he thought that is what Dr. Proctor wanted to hear.

Appellant has been in a sex offender treatment program but does not consider himself a sex offender. Instead, he believes that he is a person who made "bad mistakes" and has an opportunity to change. He believes that he is not a threat to reoffend as long as he is given the right therapy and people around him are properly educated about his triggers.

## I. ANALYSIS

## A. Admission of Hearsay From a Non-testifying Expert

Appellant's first issue argues that the trial court erred by allowing testimony about the hearsay opinion of an expert not subject to cross-examination. According to appellant, Dr. Proctor used Dr. Woodrick's evaluation to reinforce his own diagnosis. Appellant also argues that Dr. Woodrick's evaluation was inadmissible because it was prepared in anticipation of litigation.

We review a trial court's evidentiary rulings for abuse of discretion. *In re Commitment of Brown,* No. 05-16-01178-CV, 2018 WL 947904, at *7 (Tex. App.— Dallas Feb. 20, 2018, no pet.) (mem. op.). A trial court abuses its discretion when it acts without regard to guiding rules or principles. *Id.*

In 1999, the Texas Legislature enacted the Civil Commitment of Sexually Violent Predators Act to protect the public from " a small but extremely dangerous group of sexually violent predators" who "have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." Tex. Health & Safety Code Ann. § 841.001. The Act provides for the involuntary civil commitment, by means of outpatient treatment and supervision, of a repeat sexual offender who is found to be a sexually violent predator. *Id.* §§ 841.003(a), 841.081(a).

In a suit to commit a person as a sexually violent predator under the Act, the State must prove beyond a reasonable doubt that the person (1) is a "repeat sexually violent offender" and (2) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* §§ 841.003(a), 841.062(a). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* § 841.003(b); *see also id.* § 841.002(8) (defining "sexually violent offense"). A behavioral abnormality is "a congenital or acquired condition

–9–

that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). Predatory act means "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5).

Rule 705 allows a testifying expert in a sexually violent predator case to testify about a non-testifying expert's conclusion concerning a behavioral abnormality. *See In re Commitment of Sawyer*, No. 05-17-00516-CV, 2018 WL 3372924, at *6 (Tex. App.—Dallas July 11, 2018, pet. denied) (mem. op.). Many of our sister courts are in accord with this proposition. *See In re Commitment of Winkle*, 434 S.W.3d 300, 315 (Tex. App.—Beaumont 2014, pet. denied); *In re Commitment of Jurischk*, No. 03-18-00670-CV, 2019 WL 2308594, at *6 (Tex. App.—Austin May 31, 2019, no pet.) (mem. op.); *In re Commitment of Barnes*, No. 04-17-00188-CV, 2018 WL 3861401, at *5 (Tex. App.—San Antonio Aug. 15, 2018, no pet.) (mem. op.); *In re Commitment of Salazar*, No. 09-07-00345-CV, 2008 WL 4998273, at *4 (Tex. App.— Beaumont Nov. 26, 2008, pet. denied) (mem. op.).

Tex. R. Evid. 705(a) also permits the court to admit the underlying facts or data upon which an expert opinion is based. *Sawyer*, 2018 WL 3372924, at *5. "Thus, when an expert relies upon hearsay in forming her opinion, and that hearsay is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." *Id*. (citing *In re Commitment of Carr*, No. 09-14-00156-CV, 2015 WL

1611949, at *2 (Tex. App.—Beaumont Apr. 9, 2015, no pet.) (mem. op.); *Salazar*, 2008 WL 4998273, at *4). If the underlying facts and data would otherwise be inadmissible, those facts or data should be excluded only if their probative value is outweighed by their prejudicial effect. *See id.* (citing TEX. R. EVID. 705 (d)). Moreover, Rule 705 (d) provides for the use of a limiting instruction to ensure that otherwise inadmissible evidence is not improperly used by the jury. *Id.* (citing TEX. R. EVID. 705 (d); *Salazar*, 2008 WL 4998273, at *4).

Here, Dr. Proctor confirmed that he formed his opinions after reviewing appellant's records, which included Dr. Woodrick's conclusion that appellant has a behavioral abnormality. He further confirmed that this type of evidence is the type reasonably relied upon by experts in his field. Dr. Proctor's testimony indicates that while he considered the information in appellant's records, along with a significant amount of other information, he did not form an opinion about whether appellant had a behavioral abnormality until after he reviewed all the records and personally interviewed appellant.

Appellant's reliance on *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 566 (Tex. App.—San Antonio 2011, pet. denied) to argue that Dr. Proctor was acting as an improper conduit for admitting the opinion of an expert not subject to cross-examination is misplaced. In that case, appellant argued that the expert testimony at issue lacked relevance and reliability because the expert simply adopted another expert's report. *Id.* The court observed that other experts are permitted to rely on

other expert's opinions to the extent that they are of the type that would reasonably be relied upon by other expert's in the field. *Id*. The court cautioned, however, that "in doing so, the expert must in the end be giving his own opinion. He cannot simply be a conduit for the opinion of an unproduced expert." *Id.* Based on those principles, the court ultimately rejected the appellant's argument because it concluded that the testifying expert was not "merely parroting" the other expert's opinion. *Id*. at 568. Rather, the court concluded that the testifying expert was "genuinely formulating an opinion based in part on the underlying data" supplied by the non-testifying expert. *Id.*

Likewise, in this case, Dr. Proctor established that he relied on material that is reasonably relied on by experts in his field, followed his methodology (which is also the methodology employed by experts in his field), and formed his own conclusions. Dr. Proctor did not testify, or in any way suggest that he simply adopted Dr. Woodrick's opinion as his own, nor did he discuss the details of Dr. Woodrick's diagnosis or whether, and to what extent it may have affected his own diagnosis. To the contrary, Dr. Proctor merely stated that Dr. Woodrick diagnosed appellant with a behavioral abnormality and said that the diagnosis was among the plethora of records he reviewed in formulating his own opinion.

In addition, the trial court gave the jury a limiting instruction to further restrict its use of the hearsay evidence. Absent record evidence to the contrary, we presume the jury followed the trial court's limiting instructions. *In re Commitment of Millar*,

–12–

No. 05-18-00706-CV, 2019 WL 3162463, at *2 (Tex. App.—Dallas July 16, 2019, no pet.) (mem. op.). Appellant does not identify anything in the record that suggests otherwise.

Appellant also argues on appeal that the evidence was inadmissible because it was used to reinforce Dr. Proctor's diagnosis, and that Dr. Woodrick's evaluation was made in anticipation of litigation. The record does not show that appellant made either of these objections.[2] These arguments are not preserved for our review. *See* TEX. R. APP. P. 33.1(a).

We conclude the trial court did not abuse its discretion in determining the evidence was admissible and resolve appellant's first issue against him.

## B. Lay Opinion Testimony

Appellant's second issue argues the trial court abused its discretion by allowing appellant to testify about his risk of reoffending. According to appellant, this constituted impermissible lay witness opinion testimony.

The context for the complained-of testimony is as follows:

Q: Do you consider yourself to be a sex offender?

A: I consider myself to be a person that made bad mistakes that has the opportunity to change.

---

[2] Appellant objected to the testimony as "hearsay," and then later elaborated, "[m]y objection is based on the fact that the jury is made aware of this whole funneling process to get to the point where we are now. It involves evaluations from other experts who are not here testifying and essentially gets into hearsay." We reject appellant's argument that his reference to "the whole funneling process" clearly encompassed his current argument concerning "the introduction to the jury of the preparatory phase which sets the stage for this litigation."

Q: And how are you making those changes?

A: I'm making the changes by going through therapy and learning all I can learn. And on a daily basis, read over all the material that I have so I won't forget what I've already learned.

Q: Do you have a lot more to learn about your sexual offending?

A: Yes, ma'am.

Q: Do you think you're at risk right now today to reoffend in the future?

Appellant's Counsel: Objection. That's – it calls for a misleading response *and it's beyond his ability to answer.*

The Court: Overruled. I think he can give an opinion of his own reoffending in the future.

A: I feel that getting the right therapy once I get out, being with the right therapist, which I already have, and doing my – making sure the people that's around me is educated, and my triggers that probably will make me reoffend, I feel that I'm not a threat to reoffend again.

Appellant argues this is impermissible lay opinion testimony under TEX. R. EVID. 701 because nothing in the record indicates that appellant has personal knowledge of his risks for reoffending, and this is not something that appellant can observe through his five senses and draw an inference. He further argues that he lacks the training, education, or experience required to give expert opinion testimony pursuant to TEX. R. EVID. 702. We are not persuaded by this argument.

Appellant is a lay witness. A lay witness may testify to the facts of which he has personal knowledge, *see* TEX. R. EVID. 602, and "to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

TEX. R. EVID. 701. "The perception underlying the lay witness's testimony may be what was seen, heard, smelled, tasted, touched or felt." *Bd. of Trs. of Fire & Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185, 193 (Tex. App.—San Antonio 2005, pet. denied). Rule 701, therefore, "presumes the witness observed or experienced the underlying facts, thus meeting the personal-knowledge requirement of [Rule of Evidence] 602." *Id.* The general rule is that "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met." *Bishop v. Comm'n for Lawyer Discipline*, No. 01-18-01115-CV, 2020 WL 4983246, at *10 (Tex. App.—Houston [1st Dist.] Aug. 25, 2020, no pet.) (citing *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002)).

Furthermore, "[t]he personal experience and knowledge of a lay witness may establish that the witness is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge." *Health Care Serv. Corp. v. E. Tex. Med. Ctr.*, 495 S.W.3d 333, 338 (Tex. App.—Tyler 2016, no pet.); *Hathcock v. Hankook Tire Am. Corp.*, 330 S.W.3d 733, 747 (Tex. App.—Texarkana 2010, no pet.). For example, in the civil context, courts regularly allow business owners and company officers to testify as lay witnesses, based on knowledge from their positions and other relevant experience. *Id.*; *see also Hernandez v. Zapata*, No. 04-19-00507-CV, 2020 WL 3815932, at *4. (Tex. App.—San Antonio July 8, 2020, no pet.). In the criminal context, witnesses are permitted to testify to their own

intentions or other states of mind where it is material. *See Arnold v. State*, 853 S.W.2d 543, 547 (Tex. Crim. App. 1993). It is only where the fact finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert. *Hathcock*, 330 S.W.3d at 747; *Health Care Serv.*, 495 S.W.3d at 338.

In this instance, appellant testified about his participation in a treatment program and learning about being a sex offender. The question concerning his risk of reoffending did not implicate or ask appellant to opine about the scientific risk factors Dr. Proctor discussed. Rather, the question called for appellant's personal perception based on what he felt, and his own unique understanding of his intent and behavior. The trial court could reasonably have concluded that this perception was helpful to an understanding of appellant's testimony. The testimony was therefore admissible under TEX. R. EVID. 701.

Moreover, appellant does not identify, nor do we discern how this question and appellant's response harmed appellant. *See* TEX. R. APP. P. 44.1(a) (reversible error in civil cases); *In re Commitment of Bunn*, No. 09-12-00349-CV, 2013 WL 5874460, at *1 (Tex. App.—Beaumont, Oct. 31, 2013, no pet.) (judgment in a civil case cannot be reversed unless there is error that probably caused the rendition of an improper judgment or probably prevented appellant from presenting the case to the appellate court).

We resolve appellant's second issue against him and affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

200079F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

IN RE: THE COMMITMENT OF
KEVIN WAYNE ALLEN,

No. 05-20-00079-CV

On Appeal from the Criminal District
Court No. 3, Dallas County, Texas
Trial Court Cause No. CV-1970002.
Opinion delivered by Justice Garcia.
Justices Schenck and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered February 23, 2021.