In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00124-CV
_____

**WILLIAM GRIESINGER, Appellant**

**V.**

**CENTENNIAL WESTWAY PARK, LP,
D/B/A CENTURY WESTWAY PARK, LP, Appellee**

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Cause No. 1146893**

**MEMORANDUM OPINION**

In this landlord-tenant dispute, Nancy and William Griesinger sued Centennial Westway Park, LP, d/b/a Century Westway Park, LP ("Century") alleging breach of contract, failure to repair, and retaliation.[1] Century countersued the Griesingers for attorney's fees under the lease. The Griesingers initially filed suit

---

[1]This appeal was transferred to our Court from the Fourteenth District Court of Appeals as per a docket-equalization order from the Texas Supreme Court in May 2021. *See* Tex. Gov't Code Ann. § 73.001.

in the Justice of the Peace Court, and after a bench trial, the Justice of the Peace entered a take nothing judgment on the Griesingers' claims and ordered the Griesingers to pay Century's attorneys' fees.

The Griesingers appealed de novo to the County Court at Law. The parties tried the issues to the bench, and following the trial the County Court at Law rendered judgment for Century, denied the Griesingers' claims, found that Century was the "prevailing party" in the dispute, and awarded Century attorneys' fees.

William Griesinger appealed, representing himself, pro se.[2] In two issues, he complains the trial court's verdict should be set aside because (1) legally and factually insufficient evidence supports the verdict that William take-nothing on his claims, and (2) the trial court made errors in ruling on the parties' objections to the admission of evidence the trial court admitted during the trial. As discussed below, we affirm the trial court's judgment.

## BACKGROUND

On February 3, 2017, the Griesingers leased an apartment with Century for a one-year term. On December 23, 2017, the Griesingers renewed the lease through February 3, 2019 (the "Lease").

---

[2]Nancy Griesinger has not appealed the trial court's judgment and is not a party to this appeal.

2

The terms of the Lease are undisputed. The Lease contained the following provision with respect to Century's responsibilities:

31. Our Responsibilities.

31.1 Generally. We'll act with customary diligence to…

(d) make all reasonable repairs, subject to your obligation to pay for damages for which you're liable.

The time, manner, method and means of performing maintenance and repairs, including whether or which vendors to use, are within our sole discretion.

The Lease provided for remedies under Texas Property Code Section 92.056 if Century violated their responsibilities in Section 31.1. *See* Tex. Prop. Code Ann. § 92.056.

The Lease also proscribed certain conduct by the Griesingers as tenants:

20. Prohibited Conduct. You, your occupants, and your guests may not engage in the following activities:

(a) criminal conduct, regardless of whether arrest or conviction occurs, including but not limited to: manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by law; discharging a firearm in the apartment community; or, except when allowed by law, displaying or possessing a gun, knife, or other weapon in the common area, or in a way that may alarm others;

(b) behaving in a loud or obnoxious manner;

(c) disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community;

3

(d) disrupting our business operations…

The Lease further provided for the award of attorney's fees to the prevailing party in any litigation:

> 32.5 Other Remedies . . . A prevailing party may recover reasonable attorney's fees and all other litigation costs from the nonprevailing parties, except a party may not recover attorney's fees and litigation costs in connection with a party's claims seeking personal injury, sentimental, exemplary, or punitive damages. We may recover attorney's fees in connection with enforcing our rights under this Lease.

During the term of the Lease, the Griesingers asked Century's employees to repair several items in their apartment. The evidence presented at trial shows various repair issues arose in the apartment during the term of the Griesingers' lease. According to the Griesingers' Petition, the manner Century handled their request to repair their mailbox lock and front door threshold are two examples of the slow manner in which Century typically discharged its obligations under the lease. As to the mailbox lock, after the Griesingers asked for the lock to be repaired, they alleged that they notified property management that they were still having a problem with their mailbox lock. They claimed property management knew about the problem for over a year, and that as of March 2018, property management was telling them that someone would look at it, which was never done. On September 3, 2018, the Griesingers again notified property management about the lock, which was repaired within a few days. However, property management then claimed that the problem was not reported until September 3, 2018, which was incorrect, meaning that

4

Century did not act with customary diligence to make reasonable repairs since they were aware of the problem in March 2018.

With respect to the front door threshold, the Griesingers' Petition alleges that they notified property management that the issue with the front door threshold was still unresolved on February 5, 2018, because the maintenance team had installed the wrong size threshold, making it difficult to open the door and creating a fire hazard that materially affected the Griesingers' health and safety. The Griesingers further alleged that on May 26, 2018, William notified property management that the issue was still unresolved.

On November 27, 2018, Century served the Griesingers with an "Advance Notice of Lease Termination at End of Lease Term or Renewal Period." The Griesingers' Petition alleged that Century told them that they did not have a reason to terminate the lease at the end of the term. On December 13, 2018, the Griesingers' attorney sent a letter to Century's attorney stating that the termination appeared to be retaliatory. On December 20, 2018, Century responded and indicated that the reason for terminating the Lease by non-renewal was due to William's abusive behavior towards Century staff and the Griesingers' loud and obnoxious behavior.

The Griesingers sued Century in the Justice of the Peace Court and alleged three causes of action: (1) breach of contract based on Century entering the leased premises without leaving written notice of the entry and failing to make reasonable

repairs; (2) failure to repair under Section 92.056 of the Texas Property Code for failing to repair the front door threshold in the leased premises after the Griesingers provided notice about the condition, which materially affected their health or safety; and (3) retaliation under Section 92.331 of the Texas Property Code for terminating the Lease after the Griesingers exercised or attempted to exercise rights or remedies granted to them under the Lease. *See id.* §§ 92.056, 92.331. After a bench trial, the Justice of the Peace Court entered a take nothing judgment on the Griesingers' claims and ordered them to pay Century's attorneys' fees.

The Griesingers appealed to the County Court at Law, which conducted a bench trial. William testified that he first requested the mailbox lock to be fixed in July 2017. However, no work orders for the mailbox request were introduced at trial. Emails introduced at trial show that Wendy Stull, the portfolio manager for Century, acknowledged that on March 29, 2018, the mailbox lock issue had not been addressed, but the emails also show that the mailbox lock was adjusted on the same day by Rey Valenzuela, the head of maintenance. William testified that the only outstanding maintenance issue after Valenzuela's visit was the door. The evidence also shows that after Century received an email from William on September 3, 2018, requesting that the lock be fixed, Century replaced the mailbox lock the following day.

The evidence further showed that William screamed and cursed at Karen Klein, the assistant property manager, when he came into the office to discuss the mailbox service request. Klein testified, "He came into my office. He was very upset. He was yelling at me. His body was leaning over my desk. And – at which point, he slammed his hands on the desk and stated, Got that." Klein explained that when he leaned over her desk, she was in fear for her safety.

Jill Hauserman, the property manager, witnessed the incident that occurred at Klein's desk. Hauserman testified that after hearing loud voices coming from Klein's office, she went to her office and saw William leaning over Klein's desk, "pointing his finger at her in a very intimidating manner." Hauserman asked William to leave the office or she would call security, to which he responded, "You can go ahead and call the fucking police." He then left the office and slammed the front door. For his part, William denied the incident occurred.

Regarding the weather-stripping request for the front door, the evidence shows that multiple work orders were opened and closed. The first work order was requested and completed on December 4, 2017. The second work order was requested on December 6, 2017 and completed on December 7, 2017. The third work order was requested on December 18, 2017 and completed on January 3, 2018. The last work order was requested on January 3, 2018 and completed the same day. The

December 18, 2017 work order notes that the service request was unable to be completed that day because of William's behavior. The work order notes state:

> The reason for the service request for it be incomplete is because the office staff and the outside staff had a major problem issue [with] the resident himself[.] He was yelling and screaming major bad words then he threw a Christmas tree and a bunch of other things outside the front of hes [sic] door and downstairs also by the stairway.

Although Klein did not witness the incident involving the Christmas tree, Carlos De Hoyos, the maintenance supervisor, told her about it. Klein testified that Carlos reported that when maintenance went into William's apartment, William came home and began cursing and telling them to leave. Klein explained that maintenance personnel are not expected to follow through with maintenance requests when they are in fear of their personal safety from a resident and that tenants can expect repair delays if they do not act in compliance with the Lease. Klein confirmed that Carlos made the technician notes on the December 18 work order in the regular course and scope of his employment.

William testified that he had no knowledge about maintenance personnel being afraid to enter his apartment. He also denied preventing maintenance personnel from repairing his door on December 18 and using foul language toward any of the apartment leasing staff or management personnel. Although William denied throwing a Christmas tree off his balcony on December 18, he did testify that

8

he disposed of a Christmas tree by cutting it into pieces and throwing the pieces from the balcony into the courtyard.

Century presented evidence designed to show it decided not to renew the Griesingers' Lease because of the incident involving the Christmas tree, and the encounters by Century's staff where William had shouted and intimated Century employees. On November 27, 2018, Century served the Griesingers with an "Advance Notice of Lease Termination at End of Lease Term or Renewal Period." On February 2, 2021, the trial court issued its Second Modified Final Judgment, rendering judgment for Century and denying all the Griesingers' claims. Additionally, the trial court found that Century is the "prevailing party" in the dispute as used in Section 32 of the Lease and awarded attorneys' fees of $17,500.

The trial court issued Findings of Fact and Conclusions of Law. As relevant here, we summarize the findings and conclusion relevant to William's issues:

- Plaintiffs submitted multiple repair requests to Defendant, and Defendant acted with customary diligence when it sent maintenance staff to address repair requests. Work orders admitted as Plaintiffs' exhibits indicate that Defendant customarily addressed the requests within 24 hours after the request was filed.

- In December 2017, Defendant's maintenance staff repaired the weather stripping on Plaintiffs' door. The repair staff was unable to complete the work because the staff had a "major problem" with the "resident himself." "He was yelling and screaming major bad words . . ." Mr. Geisinger yelled at the maintenance staff and caused them to leave.

- In December 2017, Mr. Griesinger dropped his Christmas tree off Plaintiff's balcony, from the second floor to the first floor. The nature of the act posed a

threat to the safety of others, although, fortunately, no one was injured by the falling Christmas tree.

- In January 2018, Mr. Griesinger made Defendant's assistant property manager, Karen Klein fear for her safety and well-being. Ms. Klein testified that Mr. Griesinger entered the property management office during regular business hours, leaned his body over her desk, slammed his hands on her desk, yelled in her face, continued to shout for approximately five minutes, and used foul language in speaking with her.

In its Conclusions of Law, the trial court held that:

- Defendant has fully performed all of its obligations under the Lease with Plaintiffs.

- Plaintiffs breached their obligations under Section 20 of the Lease.

- Defendant did not retaliate against Plaintiffs as proscribed in Section 92.333 of the Texas Property Code.

- Defendant is not liable to Plaintiffs for failure to repair the Premises pursuant to Section 92.056 of the Property Code.

The Griesingers filed a motion for new trial which was denied by the trial court. William filed an appeal.

ANALYSIS

Since William's second issue complaining that the evidence is legally and factually insufficient to support the verdict that he take-nothing on his claims is dispositive, we address it first.

In an appeal from a bench trial, the trial court's findings of fact "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven*

10

*Points*, 806 S.W.2d 791, 794 (Tex. 1991) (citation omitted). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence to supporting a jury's finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Anderson*, 806 S.W.2d at 794. When the trial court's findings are unchallenged by complaint on appeal, they are binding on the appellate court unless the contrary is established as a "matter of law" or there is "no evidence" to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex. Civ. App.—Beaumont 1980, writ ref'd n.r.e.) ("Unless the trial court's findings are challenged by a point of error on appeal, they are binding upon the appellate court.").

Generally, attacks on the sufficiency of the evidence supporting findings of fact "must be directed at specific findings of fact, rather than at the judgment as a whole." *Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *see also* 6 Roy W. McDonald & Elaine Grafton Carlson, Texas Civil Practice § 18:12 (2d ed. 1998). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In evaluating the evidence's legal sufficiency, "we credit evidence that

11

supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied).

In a bench trial, the trial court acts as the factfinder and is the sole judge of the credibility of witnesses. *See Webb v. Crawley*, 590 S.W.3d 570, 578 (Tex. App.—Beaumont, no pet.); *see also City of Keller*, 168 S.W.3d at 819. When conducting a factual sufficiency review, we examine the entire record as to the findings the appellant is challenging and consider all the evidence admitted in the trial relevant to the contested finding, and after considering the same evidence the trial court considered, we may overturn the trial court's finding only if it is so contrary to the overwhelming weight of the evidence that the trial court's conclusion was clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W. 3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

### Failure to repair claim

Texas Property Code Section 92.056 addresses a landlord's liability and a tenant's remedies for failure to repair. Specifically, subsection (b) provides that:

(b) A landlord is liable to a tenant as provided by this subchapter if:

(1) the tenant has given the landlord notice to repair or remedy a condition by giving that notice to the person to whom or to the place where the tenant's rent is normally paid;

(2) the condition materially affects the physical health or safety of an ordinary tenant;

(3) the tenant has given the landlord a subsequent written notice to repair or remedy the condition after a reasonable time to repair or remedy the condition following the notice given under Subdivision (1) or the tenant has given notice under Subdivision (1) by sending that notice by certified mail, return receipt requested, by registered mail, or by another form of mail that allows tracking of delivery from the United States Postal Service or a private delivery service;

(4) the landlord has had a reasonable time to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1), and if applicable, the tenant's subsequent notice under Subdivision (3);

(5) the landlord has not made a diligent effort to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1) and, if applicable, the tenant's notice under Subdivision (3); and

(6) the tenant was not delinquent in the payment of rent at the time any notice required by this subsection was given.

Tex. Prop. Code Ann. § 92.056(b).

On appeal, William must show that the evidence is legally sufficient to support his claim that Century failed to repair the mailbox lock and the weather stripping on the door with reasonable diligence and that the mailbox lock and weather stripping affected his physical health or safety. *See id.*; *Dow Chem. Co.*, 46 S.W.3d at 241 (explaining that the "matter of law" legal-sufficiency standard applies when a party challenges an adverse finding on an issue on which he had the burden of proof). The evidence did not include any work orders for William's mailbox

13

request, but the evidence did show that on the same day Stull acknowledged that the mailbox lock issue had not been addressed, Valenzuela adjusted the mailbox lock. The evidence also shows that after receiving William's September 2018 email requesting that the lock be fixed, Century replaced the mailbox lock the following day.

The evidence further shows that the work orders regarding the weather stripping, with the exception of the work order entered December 18, 2017, were completed within one day. The trial court's finding that William did not establish his failure to repair claim as a matter of law hinged on the trial court's conclusion that the only reason that the December 18, 2017 work order's completion was delayed was because of William's behavior, which consisted of him yelling and screaming at maintenance staff and dropping a Christmas tree off his balcony, which posed a threat to the safety of others. Although William complains about "contradictory testimony" on appeal, the trial court as factfinder determines the credibility of the witnesses and the weight to be given their testimony, which we do not disturb on appeal. *See City of Keller,* 168 S.W.3d at 819. We conclude that William failed to establish as a matter of law that Century violated section 92.056 by failing exercise reasonable diligence in responding to his requests for repairs. *See City of Keller,* 168 S.W.3d at 807. We further conclude that the trial court's findings that Century acted with customary diligence and was unable to complete work on

the weather stripping due to William's behavior is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W. 3d at 242.

## Breach of contract claim

To prevail on a breach of contract claim, a plaintiff must show that: (1) a valid contract exists, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the breach damaged the plaintiff. *Trahan v. Fire Ins. Exch.*, 179 S.W.3d 669, 674 (Tex. App.—Beaumont 2005, no pet.) (citation omitted). At trial, the only breach the Griesingers pled was Century's alleged failure to repair the door and mailbox in violation of section 31.1 of the Lease, which required Century to act with customary diligence to make all reasonable repairs.

As discussed above, the evidence allowed the trial court to reasonably conclude that Century acted with reasonable and customary diligence when it sent maintenance staff to address repair requests relating to the door. Furthermore, the Griesingers failed to introduce any work orders pertaining to the mailbox lock, and the evidence allowed the trial court to reasonably conclude that Century addressed requests pertaining to the mailbox lock within a reasonable time, and even sent its head of maintenance to address William's claims directly. Moreover, the only evidence of damage introduced by the Griesingers at trial related to moving costs due to the nonrenewal of the Lease, not a failure to repair.

15

We conclude that William failed to establish as a matter of law that Century breached the Lease. *See City of Keller*, 168 S.W.3d at 807. We further conclude the trial court's determination that Century fully performed all its obligations under the Lease is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W. 3d at 242.

Retaliation claim

The Texas Property Code Section 92.331 provides that a landlord may not retaliate against a tenant by terminating the tenant's lease because the tenant gives a landlord a notice to repair or exercise a remedy legally afforded to the tenant. Tex. Prop. Code Ann. § 92.331(a)(2), (b)(4). A landlord does not retaliate against a tenant by termination a lease when the tenant, a member of the tenant's family, or a guest or invitee of the tenant intentionally damages property on the premises or by word or conduct threatens the personal safety of the landlord, the landlord's employees, or another tenant. *Id.* § 92.332(b)(2).

Here, the evidence at trial allowed the trial court to reasonably conclude that Century did not retaliate against the Griesingers for requesting repairs. Rather, the evidence at trial authorized the trial court to find that Century decided not to renew the Lease because William threatened the safety of the landlord's employees and other tenants by yelling and cursing at maintenance staff while they were attempting to repair the weather stripping on the Griesingers' door; dropping a Christmas tree

16

off his second floor balcony; and placing Klein in fear for her safety and well-being by slamming his hands on her desk, yelling in her face, and using foul language.

We conclude that William failed to establish as a matter of law that Century retaliated against him by terminating the Lease because of the Griesingers' request for repairs. *See City of Keller*, 168 S.W.3d at 807. We further conclude the trial court's determination that Century did not retaliate against the Griesingers is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W. 3d at 242. Having concluded the evidence is sufficient to support the trial court's verdict that William take nothing on his claims for breach of contract, failure to repair, and retaliation, we overrule William's first issue.

Evidentiary Complaints

In his second issue, William makes eight complaints on what he characterizes as "improper argument." Because six of his complaints were not preserved for appeal, we only address the two evidentiary complaints that were preserved.

William complains that the trial court improperly sustained defense counsel's objections to his testimony. William's attorney asked him a question that called for a "yes or no" response for whether work orders had been resolved. William then launched into a narrative response regarding how the apartment complex's workflow system should have been designed. Century's counsel objected that William was

17

testifying on matters that went beyond William's personal knowledge. The trial court sustained the objection.

"Evidentiary rulings are 'committed to the trial court's sound discretion.'" *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). "A trial court abuses its discretion when it rules 'without regard for any guiding rules or principles.'" *Id.* (quoting *Alvarado*, 897 S.W.2d at 754). "An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Id.* We will reverse an evidentiary ruling only if it probably caused the rendition of an improper judgment. *Id.*; Tex. R. App. P. 44.1.

William's testimony did not establish that he was qualified to offer an opinion regarding the apartment complex's workflow system or that he had any personal experience or knowledge regarding the design of the apartment complex's workflow system such that he was capable of expressing an opinion about how the system should have been designed. *See Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996) (citing *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)); *Health Care Serv. Corp. v. E. Tex. Med. Ctr.*, 495 S.W.3d 333, 338 (Tex. App.—Tyler 2016, no pet.); *see also* Tex. R. Evid. 701 ("Opinion Testimony by Lay Witnesses"), Tex. R. Evid. 702 ("Testimony by Expert Witnesses"). Nor did his testimony establish that he held an opinion that would have assisted the factfinder

in understanding the evidence or determining a fact at issue. *See Broders*, 924 S.W.2d at 151; *Health Care Serv. Corp.*, 495 S.W.3d at 338; *see also* Tex. R. Evid. 701, 702. We conclude the trial court did not abuse its discretion by sustaining Century's objection to William's narrative response regarding how the apartment complex's workflow system should have been designed. *See Malone*, 972 S.W.2d at 43.

William also complains about the admission into evidence of a letter from Century notifying them they had violated the terms of their lease. Century's counsel moved to admit a copy of the letter to impeach Nancy Griesinger's testimony that she had not previously received the letter notifying her that she had violated the lease. After reviewing the letter, the Griesingers' counsel did not object to Nancy testifying about the circumstances of the letter, and the trial court admitted the letter for the purpose of impeachment. Nancy testified that she did not violate her previous lease and that after she got an attorney, her landlord "backed off because I did absolutely nothing wrong." The trial court explained to Nancy that she had earlier denied receiving a letter notifying her that she had violated the lease, explaining that Century's counsel was showing her the letter for the purpose of impeachment.

After Nancy admitted receiving the letter, which notified the Griesingers' that they were in violation of the terms of their lease, Century's counsel moved to strike Nancy's prior testimony arguing the contradiction showed she willingly provided

19

false testimony. The Griesingers' counsel argued that only the testimony about not receiving the letter should be struck, and he further argued it was irrelevant and unrelated to the case. The trial court denied Century's request to strike Nancy's testimony and admitted the letter.

A party may attack a witness's credibility with impeachment evidence. *See* Tex. R. Evid. 607. Accordingly, we conclude the trial court had a legitimate basis to admit the letter and that no abuse of discretion occurred. *See id.*; *Malone*, 972 S.W.2d at 43. We overrule William's second issue. Having overruled both of William's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 4, 2022
Opinion Delivered July 27, 2023

Before Golemon, C.J., Horton and Wright, JJ.